# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles P. Kocoras | Sitting Judge If Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 4420 | **DATE** | 10/25/2004 |
| **CASE TITLE** | Local 710 vs. United Parcel Service, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ■ Status hearing set for 11/8/2004 at 9:30 A.M..
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] **ENTER MEMORANDUM OPINION:** Both motions (Docs 56-1 & 57-1) for summary judgment are denied. All other pending motions are also denied. Ruling set for October 28, 2004 is stricken.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | **Document Number** |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | OCT 2 6 2004 date docketed | |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | 67 |
| | Copy to judge/magistrate judge. | | | |
| SCT | courtroom deputy's initials | 2004 OCT 25 PM 4:18 U.S. DISTRICT COURT Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

LOCAL 710 I.B.T. PENSION FUND, )
)
Plaintiff, )
)
vs. ) 02 C 4420
)
UNITED PARCEL SERVICE INC., )
)
Defendant. )

## MEMORANDUM OPINION

CHARLES P. KOCORAS, Chief District Judge:

This matter comes before the court on the parties' cross-motions for summary judgment. For the reasons set forth below, both motions for summary judgment are denied. All other pending motions are also denied.

## BACKGROUND

Plaintiff Teamsters Local 710 Pension Fund ("Local 710 Fund") brought the present action against Defendant United Parcel Service, Inc. ("UPS") in June 2002 to compel UPS to pay allegedly delinquent contributions owed under the terms of a collective bargaining agreement ("the Local CBA") pursuant to Section 502(a)(3) and (g)(2) and Section 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(3), (g)(2); 29 U.S.C. § 1145. A discussion of the

history between the two parties prior to the filing of this action provides the necessary context for the motions presently under consideration.

The Local CBA was executed between UPS and Local 710. The Local CBA mirrored a national collective bargaining agreement ("the National CBA"), which was executed between UPS and Teamsters UPS National Negotiating Committee ("Teamsters National"). Both CBAs required UPS to create a certain number of full-time positions out of existing part-time positions during each year of the CBAs' five-year duration, spanning from August 1, 1997, to July 31, 2002. The Local CBA required UPS to create 75 full-time positions each year, whereas the National CBA required the creation of 2000 full-time positions per year. (Local CBA § 25.11; National CBA § 22.3).

During the first two years the CBAs were in effect, UPS refused to create any full-time positions, as UPS thought that a downsizing exception to its obligation applied. Teamsters National contested UPS's belief and initiated an arbitration to settle the disagreement. On February 11, 2000, Arbitrator Nicolau ruled that UPS was obligated to create the full-time positions as set forth in § 22.3 of the National CBA. He further ordered UPS to immediately begin creating the full-time positions for the adversely affected first-year employees and directed that those who should have

received full-time jobs be made whole retroactively for what they had lost by not having full-time jobs for the first year of the National CBA.

At that point, the Local 710 Union (which was not a party to the above-mentioned arbitration) and UPS contracted to apply Arbitrator Nicolau's decision, as issued, to their own identical dispute for the first year of the Local CBA. UPS and Local 710 Fund[1] memorialized this agreement in the First Year Agreement. UPS and Local 710 Fund also executed a Second Year Agreement, which mirrored the First Year Agreement except that it did not explicitly state that it was meant to apply Arbitrator Nicolau's decision in the national dispute to the local dispute.

Some time after the First and Second Year Agreements were executed, another dispute ensued between UPS and Teamsters National regarding what Arbitrator Nicolau meant by "making the employees whole" as to pension contributions. Teamsters National argued that the new full-time employees should receive contributions to their pension funds in the amounts they would have received had they enjoyed full-time status during the delinquent time period. UPS argued that it did not have to pay full contributions because the employees at issue already received some contributions in a separate pension fund for part-time employees. The issue in dispute

---

[1] Local 710 Fund has conceded that it is bound by the First and Second Year Agreements executed by the union Local 710. Accordingly, Local 710 Fund will be referred to directly as the contracting party.

was resubmitted to Arbitrator Nicolau for clarification. Prior to the issuance of a clarification, UPS and Teamsters National proposed a Supplemental Consent Award that Arbitrator Nicolau subsequently approved and implemented. The Supplemental Consent Award afforded the part-time employees, who were retroactively made full-time employees, only the difference between pension contributions they already earned as part-time employees and pension contributions they would have received as full-time employees. Local 710 Fund, however, was not a party to the arbitration and was therefore not directly bound by Arbitrator Nicolau's clarification decision. In June 2002, Local 710 Fund sought relief from this court and filed the present action.

In December 2002, Local 710 Fund and UPS filed cross-motions for summary judgment. Local 710 Fund's motion requested the court to award interest and liquidated damages on the alleged $1,573,632.00 delinquency, audit fees of $163,542.46, attorney fees, and costs. UPS requested that the court grant summary judgment in its favor, as the matter was before an arbitrator at that point, arguing that Local 710 Fund should not be allowed to subvert the arbitration process under the Local CBA for determining what UPS's pension fund contributions should be. The court denied both motions as considerable issues of disputed fact existed as to liability and damages that precluded summary judgment for either party. Local 710 I.B.T.

Pension Fund v. United Parcel Service, Inc., No. 02 C 4420 (N.D. Ill. Mar. 24, 2003) (order denying the parties' respective summary judgment motions).

In August 2003, both parties filed cross-motions for partial summary judgment regarding UPS's offset defense. These motions focused on whether UPS should have to pay full contributions to the Local 710 Fund for § 25.11 employees in light of the contributions UPS had already made on their behalf to the UPS Pension Plan; a different pension plan for part-time employees. This court agreed with UPS's position, granted UPS's motion, and denied Local 710 Fund's motion. See Local 710 I.B.T. Pension Fund v. United Parcel Service, Inc., No. 02 C 4420, 2003 U.S. Dist. LEXIS 15687 at *10 (N.D. Ill. Sept. 4, 2003). Final judgment was entered on the same day.

Local 710 Fund subsequently moved to reconsider the court's September 4 ruling pursuant to Fed. R. Civ. Proc. 59(e) and to vacate entry of final judgment pursuant to Fed. R. Civ. Proc. 60(a). On October 28, 2003, we denied the motion to reconsider but granted the motion to vacate, as the September 4 opinion "addressed only the proper formula to use in calculating any deficiency in contributions to the affected funds, not the resulting dollar amount and attendant fees, interest, etc." Local 710 I.B.T. Pension Fund v. United Parcel Service, Inc., No. 02 C 4420, 2003 U.S. Dist. LEXIS 19457, at *3 (N.D. Ill. Oct. 28, 2003).

Local 710 Fund and UPS have now filed cross-motions for summary judgment.

## LEGAL STANDARD

Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). In seeking a grant of summary judgment the moving party must identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). This initial burden may be satisfied by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the non-moving party's case." Celotex, 477 U.S. at 325. Once the movant has met this burden, the non-moving party cannot simply rest on the allegations in the pleadings, but "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); rather, "[a] genuine issue exists when the evidence is such that a reasonable jury could find for the non-movant," Buscaglia v. United States, 25 F.3d 530, 534 (7th Cir. 1994). When reviewing the record we must draw all reasonable inferences in favor of the

non-movant; however, "we are not required to draw every conceivable inference from the record—only those inferences that are reasonable." Bank Leumi Le-Israel, B.M. v. Lee, 928 F.2d 232, 236 (7th Cir. 1991).

When parties file cross-motions for summary judgment, each motion must be assessed independently, and denial of one does not necessitate the grant of the other. M. Snower & Co. v. United States, 140 F.2d 367, 369 (7th Cir. 1944). Rather, each motion evidences only that the movant believes it is entitled to judgment as a matter of law on the issues within its motion and that trial is the appropriate course of action if the court disagrees with that assessment. Miller v. LeSea Broadcasting, Inc., 87 F.3d 224, 230 (7th Cir. 1996). With these principles in mind, we turn to the parties' motions.

## DISCUSSION

Local 710 Fund, pursuant to Fed. R. Civ. P. 56(c), has moved for partial summary judgment on several issues. It contends that it is entitled to $1,497,113.36 in delinquent contributions. Local 710 Fund arrived at this amount by deducting UPS's offset credit, or the pension contributions UPS has already paid employees under part-time status ($76,518.64), from the amount of pension contributions that employees would have earned under full-time status ($1,573,632.00). Local 710 Fund further asserts that is entitled, as a matter of law, to recover from UPS: (1) interest on

whatever deficiency of contributions existed when this suit was filed in June 2002 from the dates the reduced weekly contributions should have been paid to the Local 710 Fund through October 24, 2002; (2) liquidated damages equal to the interest owed; (3) $163,542.46 for auditing services in connection with investigating the alleged delinquencies; and (4) reasonable attorney fees and costs associated with this action.

UPS, in moving for summary judgment, has offered a diametrically opposite view as to what amount would purportedly make 166 retroactively classified employees whole. UPS asserts that summary judgment in an amount no greater than $336,993.00 is appropriate. UPS offers numerous bases and a step-by-step arithmetic approach to support the notion that the Local 710 Fund has significantly overstated the amount to which the affected employees may be entitled. Most notably, UPS urges that this case is about *benefit* entitlement, not *contribution* entitlement. UPS argues that "contributions" to the UPS National Pension Plan have no relevance to funding the Local 710 Fund, and the 166 retroactively classified employees must be made whole as to service credits they would have earned, for which "contributions" cannot here be a measuring stick. UPS cautions that in the pension/actuarial world, subtleties among words like "service credits," "benefits," and "contributions," have potentially different connotations when used in defined benefit plans, defined contribution plans, and multi-employer and single-employer plans. UPS goes on to argue that contributions provide

the benefits through a pension fund structure, but employees do not earn or receive the contributions. Instead, employees earn and receive the benefits in the form of service credits that translate to monthly benefits upon retirement.

The issues presented in the parties' motions, such as damage calculations and the specific meaning of industry terms of art, are not issues that can be disposed of via the procedural vehicle of summary judgment. The dispute between the parties is genuine, as both have proffered reasonable evidence to support their calculations of what amount would make the affected employees whole. The issues presented are material, because this entire cause of action is based upon employee benefits and the amount that the affected group of employees are allegedly entitled to receive. Further, the issue raised by UPS regarding the connotation of certain words when used in the context of employee benefits constitutes an additional genuine issue of material fact, rendering summary judgment improper. In a previous ruling, this court addressed only "the proper formula to use in calculating any deficiency in contributions to the affected funds, not the resulting dollar amount and attendant fees, interest, etc." See Local 710 I.B.T. Pension Fund, 2003 U.S. Dist. LEXIS 19457, at *3. The positions set forth in the respective motions, although logistically different, provide sufficient support for a reasonable trier of fact to find in favor of either party. Resolving disputes over the

meaning certain contractual terms[2] have in a particular context and their effect on any subsequent award of damages, if any, is not appropriate on the current state of the record.

In accordance with the conclusion that summary judgment is not warranted as to either parties' positions, UPS's motion for leave to file a supplemental declaration in support of its motion for summary judgment is denied. Local 710 Fund's motion to strike UPS's Rule 56.1 statement of undisputed material facts is rendered moot and is thus denied.

## CONCLUSION

Based on the foregoing analysis, both motions for summary judgment are denied. All other pending motions are also denied.

_____
Charles P. Kocoras
Chief Judge
United States District Court

Dated: OCT 2 5 2004

---

[2] The issue of the specific meaning of the term "contributions" was first raised in UPS's motion for summary judgment. The parties have not developed the issue, so the court is not in a position to determine whether that term is unambiguous as used in the parties' agreement. Without resolving that threshold question, we cannot determine the meaning of that term as a matter of law.